UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MICHAEL WILLIAMSON,**

          **Plaintiff,**

**-vs-**                                            **Case No. 6:08-cv-32-Orl-31GKJ**

**ADVENTIST HEALTH
SYSTEM/SUNBELT, INC., SOUTHWEST
VOLUSIA HEALTHCARE
CORPORATION, MEMORIAL HEALTH
SYSTEMS, INC., and MEDICAL
STAFFING NETWORK, INC., ,**

          **Defendants.**

## ORDER

This matter comes before the Court on the Motions for Summary Judgment filed by Defendant Adventist Health System/Sunbelt, Inc. ("Adventist Health") (Doc. 32), Defendant Memorial Health Systems, Inc. d/b/a Florida Hospital Oceanside ("Oceanside") (Doc. 34), Defendant Southwest Volusia Healthcare Corporation d/b/a Florida Hospital Fish Memorial ("Fish Memorial") (Doc. 35), and Defendant Medical Staffing Network, Inc. ("Medical Staffing") (Doc. 36), as well as the responses (Doc. 39, 41) filed by the Plaintiff, Michael Williamson ("Williamson"), and the reply to that response (Doc. 44) filed by Oceanside and Fish Memorial.

**I.    Background**

Williamson, a Jamaican-born black male (Doc. 1 at 4), is a Licensed Practical Nurse, or LPN. During the times at issue in this case, he was employed by Medical Staffing, a service that places nurses in temporary positions in hospitals and similar facilities. In June and July 2006,

Williamson was assigned by Medical Staffing to work at Oceanside, where he worked approximately five shifts, and then at Fish Memorial, where he worked seventeen shifts. Adventist Health owns both Oceanside and Fish Memorial.

Williamson contends that he was subjected to racial discrimination while working at both facilities, both of which allegedly culminated in his termination. At Oceanside, he contends, he was asked to perform janitorial duties and when he refused, he was called a "stupid nigger" and terminated. At Fish Memorial, he was held responsible for an incident in which a patient did not receive his medication, and terminated. He contends that he was not at fault, and that this was one of several occasions where he was treated differently at Fish Memorial due to his race.

On January 7, 2008, Williamson filed the instant suit, contending that the Defendants discriminated against him on the basis of his race in violation of Title VII and interfered with his right to make and enforce contracts in violation of 42 U.S.C. §1981. All four of the Defendants now seek summary judgment as to both claims asserted against them.

**II.    Standards**

    **A.    Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

**B.  Title VII**

To establish a Title VII discrimination claim, a plaintiff must present proof of discriminatory intent through either direct or circumstantial evidence. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. *See Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). Where the plaintiff is able to prove by direct evidence that the employer acted with a discriminatory motive, the employer to

prevail must prove, by a preponderance of the evidence, that the same decision would have been reached even absent that motive. *Miles v. M.N.C. Corp.*, 750 F.2d 867, 875-76 (11th Cir. 1985).

In a case where there is no direct evidence of discrimination, a court is to analyze whether summary judgment is appropriate under the familiar framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Barton*, 450 U.S. 248 (1981). *See Wilson*, 376 F.3d at 1087. Under that framework, the plaintiff first bears the threshold burden of establishing a prima facie case of discrimination. *Id.* The manner of doing so is not fixed; rather, it depends to a large degree on the situation. *Id.*; *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir. 1989). A prima facie case is established, in a given situation, by evidence that tends to eliminate the most common nondiscriminatory reasons for an employer's action. *See Gerwens*, 874 F.2d at 1539. Generally speaking, a plaintiff may establish a prima facie case of race discrimination by showing that: (1) he belongs to a racial minority; (2) he was subjected to adverse employment actions; (3) his employer treated similarly-situated employees outside his racial minority more favorably; and (4) he was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Failing that, the plaintiff must, at least, meet the threshold of establishing facts to support a reasonable inference of discriminatory intent. *Id.* at 1562, 1564; *Wilson*, 376 F.3d at 1087, 1092.

If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Wilson*, 376 F.3d at 1087. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citation omitted). If the proffered reason might motivate a reasonable employer, the presumption of discrimination is

rebutted. *Id*. The plaintiff must meet any such proffered reason head on, rather than quarrel with its reasonableness, and prove that it is a pretext – *i.e.*, the proffered reason did not honestly motivate the employer. *Id*; *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that, regardless of whether the proffered reason is unfair, heavy handed, or based on erroneous facts, the "inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citations omitted).

### C. Section 1981

Section 1981 provides, in pertinent part, that all persons within the jurisdiction of the United States "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981 (a). The standards for proving racially discriminatory treatment in violation of Section 1981 are the same as the standards for proving racially discriminatory treatment in violation of Title VII. *Crawford v. Western Elec. Co., Inc.*, 745 F. 2d 1373, 1376-77 (11th Cir. 1984).

## III. Analysis

### Adventist Health

Williamson was not employed by Adventist Health, and he does not allege that Adventist Health or its employees ever took any actions against him directly, such as firing him or subjecting him to racial epithets. He seeks to hold Adventist Health liable in this case solely in its capacity as owner of Defendants Oceanside and Fish Memorial, which operated the two hospitals where he worked.

It is well settled that parent companies are not liable for acts of their wholly owned subsidiaries merely because they own their stock. *See*, *e.g.*, *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Adventist Health argues that Williamson has not produced any evidence that would justify holding it liable for discrimination inflicted by any of the other defendants.[1] In response, Williamson is unable to point to any such evidence, such as anything to show that Adventist Health exerted control over the employees of Oceanside or Fish Memorial. (Doc. 39 at 4). Williamson instead points to the fact that he has not been assigned to work for any Adventist Health-owned hospitals since the events at issue in his complaint, and suggests that a reasonable jury could conclude that Adventist Health was in a position to interfere with his employment relationship with Medical Staffing, and did so. (Doc. 39 at 5-6). But the former is not evidence of discrimination or grounds for holding Adventist Health liable for discrimination committed by others, and the latter is entirely speculative. Williamson has failed to demonstrate the existence of a genuine issue of material fact with regard to his claims against Adventist Health, which is therefore entitled to summary judgment.

**EEOC Charge**

By statute, a Title VII plaintiff must file his claim within 90 days of receiving his right-to-sue letter from the Equal Employment Opportunity Commission. 42 U.S.C. §2000e-5(f)(1). Williamson filed this suit on January 7, 2008, more than six months after the EEOC issued his right-to-sue letter. The three remaining defendants all contend that the Title VII claims against them are therefore barred as untimely. However, Williamson testified that his right-to-sue letter

---

[1]Such as, for example, if Adventist Health was actually a joint employer with Oceanside or Fish Memorial. *See*, *e.g.*, *Smith v. Auto Nation, Inc.*, 2008 WL 3155055 (S.D.Fla. 2008).

was initially mailed to his previous address, and he did not receive it until October 2007 – less than 90 days before he brought suit. There is also record evidence that Williamson notified the EEOC of his new address prior to its issuance of the right-to-sue letter, including a letter received by the EEOC in November 2006 in which Williamson wrote that "my address and telephone number has[sic] been changed". (Doc. 35-5 at 3). Williamson included the proper address (and did not list the old address) in the letter. (Doc. 35-5 at 3). As such, a reasonable jury could conclude that Williams was not at fault for the untimely filing of this suit.

      **Medical Staffing**

Williamson contends that Medical Staffing discriminated against him by complying with requests from Oceanside and Fish Memorial that he not be assigned to work at their facilities anymore. There is a dispute as to whether Oceanside made such a request; however, assuming that such a request occurred, the Court concludes that Williamson has not provided sufficient evidence of discrimination on the part of Medical Staffing to survive a motion for summary judgment.

As Medical Staffing notes, it is not clear from Williamson's complaint or his papers whether he is contending that he was subjected to hostile environment discrimination, disparate treatment discrimination, or both. Regardless, Williamson has not shown any basis for holding Medical Staffing liable. He has not even argued that Medical Staffing intended to discriminate against him when it complied with the request to stop assigning him to Oceanside or Fish Memorial. He has not produced any evidence that Medical Staffing could control the allegedly discriminatory employees at Oceanside or Fish Memorial or even that Medical Staffing knew about most of the events at issue in this suit until after it had ended his assignment to those facilities. Moreover, he has not produced any evidence that Medical Staffing had a choice about

whether to keep assigning him to work at Oceanside and Fish Memorial after those entities requested that he be reassigned.² And Williamson has not even attempted to show that Medical Staffing treated anyone outside of his protected class more favorably than it treated him, such as by continuing to reassign them to a particular facility against the wishes of its owner. Williamson has failed to establish a *prima facie* case as to Medical Staffing.

**The Hospital Defendants**

The temporary staffing relationship between Medical Staffing on the one hand and Oceanside and Fish Memorial on the other raises a question as to which entity or entities should properly be considered Williamson's "employer" under Title VII and Section 1981. Rather than attempting to resolve that issue on summary judgment, for the purpose of resolving the instant motions the Court assumes that Oceanside and Fish Memorial were Williamson's "employer" when he was working at their facilities, just as Medical Staffing was.

In his response to the motions for summary judgment from Oceanside and Fish Memorial, Williamson has tried to lump together all of the allegedly discriminatory conduct he experienced while working at those facilities. However, he has not shown any basis for holding Oceanside responsible for the actions of Fish Memorial's employees, or vice versa. The Court will therefore consider the conduct that allegedly occurred at each facility separately.

---

²The Court also notes that Williamson's legal theory makes little sense in regard to Medical Staffing. In essence, Williamson is complaining that Medical Staffing discriminated against him by refusing to return him to workplaces where he was being discriminated against If anything, requiring an employee to return to such a situation would appear to be the wrong choice for an employer in Medical Staffing's position.

**Oceanside**

Williamson relies on two incidents to establish that he was subjected to discrimination while working at Oceanside. In the first, another nurse requested that Williamson be assigned the duties of a Patient Care Technician. The duties of a PCT overlap somewhat with those of an LPN, but the duties of a PCT are somewhat more janitorial in nature. However, Williamson was not asked to perform the PCT duties at that time.

On July 3, 2006, Williamson was asked by the charge nurse, Helen Turk ("Turk"), to perform the duties of a PCT. Williamson refused. According to Williamson, this greatly angered Turk, leading her to ask him, "Who do you think you are?" He contends that subsequently, when she saw him approaching with what appeared to be a time sheet requiring her signature, she told him, "Get out of here, I'm not signing anything, you stupid nigger."[3] He contends that both Turk's request that he work as a PCT and her subsequent refusal to sign anything for him – which Williamson interprets as a termination – were motivated by racial animus. After the July 3 incident, Williamson was not assigned to work at Oceanside again.

The first incident obviously cannot support a claim of discrimination, as the suggestion to reassign Williamson's duties was not implemented, and therefore his employment was not affected. As for the second incident, there is no evidence that Williamson was singled out for reassignment to PCT duties due to his race. Turk testified that white LPNs were assigned to work as PCTs when the need arose, and that a white LPN had been doing so the night Turk was asked to

---

[3] Although Turk denies making these statements, the Court will treat Williamson's allegations that she did so as true for purposes of resolving the motion.

do so. A Medical Staffing representative testified that it was not uncommon for LPNs to be asked to perform PCT duties. Williamson did not produce any evidence to the contrary. Moreover, Williamson's refusal to perform his assigned duties is enough to establish that Oceanside would have requested his reassignment even in the absence of Turk's allegedly discriminatory animus.

In addition, Williamson failed to exhaust his administrative remedies as to Oceanside, as he failed to file a charge of discrimination against that entity with the EEOC. Williamson did file a charge against "Florida Hospital" that included, among other things, a claim that he was discriminated against on July 3, 2006 – the date of the incident involving Turk. However, Williamson listed Fish Memorial's address on the form, not that of Oceanside, and the remainder of the information included (such as other harassment and a termination on July 26, 2006) pertains to Fish Memorial, not Oceanside. Williamson contends that the EEOC investigator told him that Oceanside and Fish Memorial were "the same". However, when Williamson requested his right to sue letter, he did so as to "Florida Hospital (Fish Memorial)". (Doc. 34-5 at 3). And it is undisputed that Oceanside was not notified of Williamson's claim by the EEOC.

**Fish Memorial**

According to Williamson, he was forced to endure a number of different incidents of mistreatment while working at Fish Memorial. He contends that he was refused a computer password, and that one of the nurses refused to talk to him. He also complains that he was repeatedly criticized for being too diligent. For example, he says that he was criticized for including information in patients' charts about mistakes made by other hospital employees, thereby exposing the hospital to the threat of a malpractice suit. However, as to these alleged incidents, there is no evidence that this treatment was based on Williamson's race. Williamson

has made no showing that white LPNs in his position were issued passwords, or that the anonymous nurse who would not talk to him treated white co-workers differently. Indeed, as to the complaints regarding his allegedly excessive diligence, the complaints were admittedly based on a fear of liability, not racial animus. Thus, these incidents cannot constitute evidence of discrimination.

Williamson does assert that Jean Kaster – the Director of the Medical Surgical Department at Fish Memorial – addressed him on approximately three occasions by saying "Hey, mon" and joking about him coming from a "banana boat". Williamson also asserts that when he returned to Fish Memorial to discuss the Lovenox incident (discussed below) with Kaster, he overheard her on the phone saying "That Jamaican boy, who does he think he is?"[4]

Williamson worked his last shift at Fish Memorial on July 26, 2006. Near the beginning of his shift, Williamson testified, he learned that one of Fish Memorial's physicians, Dr. Hood, had changed a patient's medication to Lovenox, and that Williamson needed to obtain the new medication from the hospital pharmacy and administer it as soon as possible. Williamson testified that he repeatedly contacted the pharmacy but the drug was not dispensed before his shift ended. On July 28, Williamson was contacted by someone from Medical Staffing and told that the doctor was very upset about the failure to obtain the medication and that he – Williamson – was being blamed. (Williamson contends that the failure to dispense the Lovenox lies with the pharmacy and

---

[4] As noted above, it is not clear whether Williamson intends to assert a hostile environment claim in this suit. If he does, these remarks by Kaster are not enough to support such a finding. A plaintiff must establish not only that he perceived the environment was hostile, but that a reasonable person would perceive the environment as hostile and abusive, considering the totality of the circumstances. *See, e.g.*, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000).

with Christine Tarkowski, the "Resource" nurse on duty during his shift, for failing to insist that the pharmacists fill the prescription.) According to Williamson, the Medical Staffing representative told him that Kaster had asked that he not be assigned to any Florida Hospital entity, although Kaster testified she only asked that he not be assigned to Fish Memorial. Williamson testified that after the Lovenox incident, he was never offered assignments by Medical Staffing.

Williams appears to argue that Kaster's remarks – saying "Hey, mon," asking if he had traveled by banana boat, and calling him a "Jamaican boy" – constitute direct evidence of racial discrimination. They do not. For one thing, they appear to refer to his national origin, rather than his race. But even assuming that a reference to his race is implicit in those remarks, they do not constitute direct evidence of discrimination, because they do not explicitly demonstrate an intent to discriminate against Williamson. Moreover, they were not made in relation to any employment decision regarding him.

Similarly, Williamson cannot establish a *prima facie* case by way of circumstantial evidence. Among other problems, Williamson has failed to make a showing that any employees from outside of his protected class were treated more favorably than he was under similar circumstances. He complains that Tarkowski, who is white, was not punished for the failure to administer the Lovenox. But he has not produced any evidence that Tarkowski bore any responsibility for seeing that this drug was administered, or that the prescribing doctor blamed Tarkowski for the failure. Williamson has also produced no evidence from which a reasonable jury could conclude that Tarkowski, a permanent employee with apparently different job

responsibilities, was "similarly situated" to Williamson, a temporary employee.[5]   Thus Williamson has failed to establish a *prima facie* case of discrimination under with either direct or circumstantial evidence.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment filed by Defendant Adventist Health System/Sunbelt, Inc. (Doc. 32) is **GRANTED**; and it is further

**ORDERED** that the Motion for Summary Judgment filed by Defendant Memorial Health Systems, Inc. d/b/a Florida Hospital Oceanside (Doc. 34) is **GRANTED**; and it is further

**ORDERED** that the Motion for Summary Judgment filed by Defendant Southwest Volusia Healthcare Corporation d/b/a Florida Hospital Fish Memorial (Doc. 35) is **GRANTED**; and it is further

---

[5] As evidence of disparate treatment, Williamson also cites one white nurse who improperly recorded information on patients' charts and another who left a tourniquet on a patient's arm for too long, complaining that they were not punished for their errors.  But Williamson makes no more effort to establish that these anonymous nurses were similarly situated to him than he did with Tarkowski.

**ORDERED** that the Motion for Summary Judgment filed by Defendant Medical Staffing Network, Inc. (Doc. 36) is **GRANTED**. The Clerk is directed to enter judgment for the Defendants and close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 18, 2009.

GREGORY A. PRESNELL<br>UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party